IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY D. NELSON         *
    Petitioner         *
  v.                                   CRIM NO.  AW-10-048
                          *           CIVIL NO.  AW-12-1212
UNITED STATES OF AMERICA.  *
    Respondent        *
                               **************

**MEMORANDUM OPINION**

      Before the Court is a Motion/Petition to Vacate filed by the Petitioner/Defendant, Anthony D. Nelson, for relief pursuant to 18 U.S.C. § 2255.  On January 25, 2011 and pursuant to a written plea agreement dated January 21, 2011 Petitioner pled guilty to Armed Bank Robbery and two counts of using and brandishing a firearm during a crime of violence.  As part of the Rule 11 (plea) inquiry, Petitioner acknowledged and admitted to the murder of Richard Botchway.  The parties worked out a global plea agreement in which the State's Attorney for Prince George's County [who was prosecuting the related murder charge in state court] signed off on the agreement and agreed to the disposition in federal court.  The Court accepted the guilty plea and ordered a presentence report.  Sentencing was held on April 18, 2011.  The Court accepted the joint recommendation of both the Government and Defense Counsel and imposed a sentence of 50 years (600)  months imprisonment, in light of the advisory guidelines and the additional factors set forth in Title 18, U.S.C., section 3553(a).  The recommended and imposed sentence consisted of 18 years for Count One, 7 years consecutive for Count Three, and 25 years consecutive for Count Five.  Judgment was entered on April 20, 2011.  The record reflects that no appeal was filed or taken by either party.  The present and pending §2255 was timely filed by Petitioner on April 19, 2012. The Government has responded to the Motion and despite the Court

having granted Petitioner's request for an extension to file a Reply, no Reply was filed. The Motion is now ripe for resolution. In his Motion, Petitioner contends (under a single ground containing separate issues) that he was the victim of ineffective assistance of counsel. Petitioner presents some 15 alleges errors which he claims support his request for relief. The Court shall discuss each of these 15 alleged errors in the order that Petitioner raises them.

With respect to the claims by Petitioner that his counsel was ineffective, the Court reviews his allegations under the well-established standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), under which a claimant must establish the two prong standard of deficient performance and prejudice. In other words, in order to succeed on his claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient in that counsel made errors so serious that he ceased to function as a counsel within the meaning of the Sixth Amendment, and that the alleged deficient performance prejudiced the defense. Id.

First, the Petitioner must show that counsel's representation "fell below an objective standard or reasonableness", as measured by prevailing professional norms. Id at 688. Courts should be deferential in this inquiry, and have "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id at 689. The Petitioner must, therefore, overcome the presumption that the representation "might be considered sound trial strategy." Second, Petitioner must demonstrate that counsel's inadequate performance prejudiced him. Id at 687. Here, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id at 694. A reasonable probability, in turn, is defined as "a probability sufficient to undermine confidence in the outcome." In short, Petitioner must demonstrate that but for counsel's errors,

there is a reasonable probability that he would not have been convicted. With these legal principles in mind, the Court now turns to Petitioner's arguments.

Petitioner's first claim (a) is unclear. He says (essentially) that his court appointed counsel had never made a mention of his defense during the proffer hearing but rather took sides with the prosecutor. This claim [as stated] is an insufficient basis to vacate the judgment and sentence. Petitioner next claims that his attorney never filed a notice of appeal from the sentence despite the Court having stated that Petitioner had the right to appeal his sentence even after he pled guilty. While it is true that the Court went over with Petitioner the waiver of his appeal rights and his understanding that he was waiving his rights to appeal, the court [notwithstanding his waiver] advised Petitioner he had a right to note an appeal. The Court notes that in this claim designated as (#b), Petitioner does not mention that he specifically instructed his attorney to appeal. Nor is there anything in the record which points to any desire expressed by Petitioner to appeal, or points to any specific instruction to appeal, or points to any particular issue which Petitioner requested his counsel to pursue. Here, under the plea agreement, Petitioner waived his rights to appeal and the Court carefully went over that waiver in the Rule 11 colloquy. It is true that notwithstanding his waiver, there still is an absolute right to appeal, yet Plaintiff does not specifically represent in this claim # b, nor does Petitioner provide any showing (i.e letter or correspondence) that he specifically wanted and instructed his attorney to appeal. Moreover, Petitioner has not shown any ensuing prejudice as a result of his attorney not having filed (without any specific request) what appears to would have been a frivolous appeal subject to summary dismissal in light of the waiver of Petitioner's right to appeal. This claim has no merit.

Petitioner next © argues that his counsel failed to file a motion to suppress identification, and failed to challenge the absence of a photo array and line-up. The short answer to this claim

3

is that counsel did file a motion to suppress identification. While the motion to suppress was never heard because Petitioner subsequently agreed to a global plea, there is nothing presented herein to indicate that there was any taint or "impermissive suggestiveness" to serve as the basis for a successful or meaningful challenge to the identification. Furthermore, this court knows of no entitlement to a photo array or line-up. A motion to suppress, therefore, having been filed by counsel, and there being no showing of either a deficiency by counsel or any resulting prejudice, this claim is rejected.

The next three claims (#s d, e, and f) deal with DNA evidence and can be addressed together. Petitioner argues (#d) that his counsel did not file a motion to suppress the DNA test, (#e) that his counsel did not challenge the DNA evidence, and (#f) that his counsel did not obtain an independent DNA. The Court finds that these claims are insufficient to support grounds for relief under § 2255. First, counsel for Plaintiff represented, in fact, at the rule 11 proceeding that he had hired and had counseled with an independent DNA expert as part of his representation of Petitioner. Petitioner acknowledged at the hearing that counsel's representation was correct. (See page 24 of the Rule 11 proceeding). Second, Petitioner has not presented any details or specifics as to the basis for suppressing the DNA evidence nor how a challenge to the DNA evidence would be successful and otherwise relevant to Petitioner's decision to accept a global plea to the serious charges he was facing. What Petitioner raises is the unknown and uncertain possibility that a successful challenge might have undermined the DNA evidence which had been developed against him. This possibility is but a bare assertion. Petitioner has not presented a sufficient basis to support his claim that his counsel was ineffective in not challenging the DNA evidence.

Petitioner next (#g) contends that his counsel was ineffective in not moving to suppress

the body wire worn by one of the witnesses, Shameka Cooper.  Again, Petitioner has not shown how the filing of such a motion had any merit or relevance.  In this claim, Petitioner raises the issue of whether recording the audio by a witness who visited with Petitioner in the jail was legal or lawful.  Petitioner's counsel, undoubtedly, was aware that the law permits law enforcement officials to intercept a communication where one party to the conversation had consented to the recording of the conversation.  Petitioner does not make any showing of how such a motion would be successful or relevant to his subsequent decision to enter a negotiated global plea.  This claim must be denied.

In claims #h, and # i, Petitioner contends that his counsel was ineffective in not moving to dismiss the charges on the ground of a violation of speedy rights, and that his counsel did not investigate alibi witnesses.  Beyond stating that his speedy rights were violated and adding some unclear verbiage, Petitioner presents nothing to show such a motion was appropriate or meaningful in this case.  Moreover, as the Government points out, the Court [at the joint request of the parties and because of the complexity of the case and the extensive discovery material] entered a Speedy Rights Order (dated 6-14-10) tolling the Speedy Trial and entering a scheduling order. (See paper # 41).   The claim that counsel failed to interview alibi witnesses does not identify the names of any witnesses, nor does this claim contains any details, specificity or substance of any proposed testimony or evidence relevant or available for counsel to have contacted or interviewed.  The claim that counsel failed to alibi witness is but a bald allegation, bereft of any substance.  Accordingly, the claims of ineffective assistance of counsel based upon a failure to file a motion to dismiss for a violation of speedy trial, and the failure to interview alibi witness both fail for insufficiency.

In claim # j, Petitioner argues that his plea was not intelligently nor voluntarily made.

5

Specifically, Petitioner alleges that his attorney coerced and pressured him into pleading guilty by telling him that if he did not accept the 600 months he would receive the death penalty. The initial problem Petitioner confronts with this claim is that the Court specifically inquired of Petitioner whether anyone threatened him to get him to plead guilty and Petitioner, responded. "No sir." The Court also asked Petitioner whether he was satisfied with his counsel to which Petitioner responded that he was. (See, page 22 of transcript of January 25, 2011 Rule 11 proceeding). To the extent that counsel for Petitioner advised counsel of the potential death penalty exposure, and recommended that Petitioner consider or accept the negotiated plea, the Court finds such a discussion and recommendation, reasonable, necessary and appropriate under the circumstances. As part of the plea agreement, Petitioner stipulated and agreed that (presumably without warning, without being threatened, and unbeknoweth to the victim who was behind the wheel in the driver's seat) Petitioner pulled out a handgun and fired it into the back of the victim's head, instantly killing him. This particular factual stipulation contains significant trappings of capital murder. At any rate, Petitioner was exposed to significant sanctions both on the federal and state level which included a possible death sentence, and/or a life (without parole) sentence. The Court rejects Petitioner's claim that his attorney inappropriately threatened or coerced him, and otherwise provided ineffective assistance of counsel by bringing up and recommending that he accept the negotiated plea to lessen his sentence, including eliminating any exposure to a capital murder prosecution.

Likewise, Petitioner's claim #k ( his counsel failed to subpoena petitioner's witnesses fail for the same reasons the court rejected the claim that counsel failed to interview the alleged alibi witnesses (see discussion above as to claim # i). Petitioner has not provided any names, or any details, nor has Petitioner proffered anything with respect to what relevant testimony or evidence

these unnamed witnesses could provide. Also, as indicated before, this Court at the Rule 11 proceeding specifically advised Petitioner that he had the right to have any witnesses he wanted to testify at trial and subpoenaed if they refused to come. The Petitioner acknowledged that he understood this right and waived it. (See pages 26-27 of Rule 11 transcript). This claim (#k), therefore, is but a bald allegation and devoid of merit.

Claim #L appears to be a claim that Petitioner and his counsel had some kind of breakdown. Yet the record belies such a claim: The Court: Do you have any complaints about the representation of (counsel) which you need to bring to my attention right now? The Defendant: No, Sir. The Court: Has he done everything that you've asked him to do that he can do? The Defendant: Yes, Sir. There is nothing unclear about those answers. There is always tension from time to time between a client and his/her attorney, particularly where significant decisions have to be recommended and made in the face of serious charges faced by the client. Yet there is nothing presented in this claim, nor in the record to support the claim that there was a breakdown which rendered counsel's representation constitutionally ineffective. This claim fails.

The last remaining claims (m, n, and o) which petitioner raises in support of his argument that his counsel rendered ineffective assistance of counsel can be quickly addressed. In claim #m, Petitioner argues that he was charged with two separate handgun offenses but charged with only one bank robbery. This statement is flat out untrue. While Petitioner only pled to one count of armed Bank Robbery, the 5 count superseding indictment charged Petitioner with two separate armed bank robberies and one attempted bank robbery. Each of the Use and Carrying of a Firearm during a Crime of Violence charges which Petitioner pled to and was sentenced on were for two separate armed bank robberies (February 11, 2005 and April 28, 2005) which Petitioner

7

was charged with and to which Petitioner stipulated to in his plea agreement. There is no double jeopardy violation as suggested by Petitioner, nor does the Court find anything inappropriate or legally defective in Petitioner' sentence. In claim # n, Petitioner asserts that his counsel failed to challenge the two gun charges in the superseding indictment as being barred by the 5 year statute of limitations. As indicated by the parties, the relevant statute of limitations (18 U.S.C. § 3282) for the gun charges is 5 years. As lifted from the stipulated statement of facts, the first armed bank robbery including the use and carrying of the handgun occurred on February 11. 2005. The docket (#1) reflects that Petitioner was charged on February 9, 2010, and, therefore, within the 5 year period of limitations. The second armed bank robbery including the use and carrying of the handgun occurred on April 28, 2005. The docket reflects that Petitioner was charged (in a superseding indictment-docket #21) with this second incident on March 29, 2010 and, therefore, (also) within the 5 year period of limitations. Because there appear to be no violation of the statute of limitations in either of the handgun offenses, the Court cannot find that counsel was ineffective in failing to raise this issue. Finally, in claim #o, Petitioner alleges that his counsel was ineffective in not investigating, in not raising and in not developing evidence (*via* hiring a mental health expert) with respect to Petitioner's mental health and competency. Again, the transcript of the plea colloquy is instructive: The Court: Have you ever been hospitalized for any mental illness or addiction to drugs? The Defendant: No, sir. The Court: And how would you describe, Mr. Nelson, your physical and mental condition now as we speak. The Defendant: I am a sane person. The Court: You're what? The Defendant: I'm capable of--. The Court: -- and you feel okay? The Defendant: Yes, Sir. The Court: No issues to complain about physically? The Defendant: No, Sir.

Despite those responses, Petitioner now claims that he informed his attorney that he had

been seen in the past by a psychiatrist for anxiety, depression, schizophrenic and because of past childhood mental abuse and child abuse. In the Rule 11 proceeding, the Court asked the required questions of Petitioner, heard and considered the responses, observed Petitioner, and thereafter concluded that Petitioner had made a knowing and voluntary decision to plead guilty. Beyond these recent allegations made by Petitioner in his Motion to Vacate that he brought some past health and mental issues to the attention of his counsel, there is nothing in the record (no specific facts, circumstances, or information) to support, suggest, indicate or alert counsel [or the Court for that matter] that mental health or competency were viable issues, were relevant to Petitioner's entry of the guilty pleas, or were in any way plausible issues to be considered or developed. In short, the Court finds that Petitioner has not made a sufficient showing that his counsel rendered ineffective assistance of counsel by not hiring a mental health expert or otherwise pursing any defenses addressing mental illness and lack of competency.

Having reviewed the Petitioner's Motion, the Government's response thereto, the transcript of the Rule 11 proceeding, and the entire record, it is abundantly clear to the Court that every one of Petitioner's claims are meritless. Facing a serious charge with a potential enormous sentence, Petitioner and his attorney negotiated with the Government a global plea agreement where the parties would jointly recommend a 50 year sentence. The Court feels compelled to also note that Petitioner's counsel has long been considered among the most revered attorneys in the state. Because of the high regard held by this bench for Petitioner's counsel, counsel was, specifically, appointed to provide representation to Petitioner who was facing extremely serious federal and state charges.

In sum, the Court carefully and thoroughly conducted the Rule 11 colloquy and determined, *inter alia*, that: Petitioner wanted to plead guilty; admitted he was guilty; accepted

9

the stipulated set of facts; indicated that he was satisfied with his attorney and had absolutely no complaints as to what his counsel had done or not done; understood his constitutional rights (including his right to a trial) and that he was waving them; understood that he and the Government were waiving their rights of appeal; and indicated that he had read, considered and had reviewed the plea agreement with his counsel. At the conclusion of the Rule 11 inquiry, the Court concluded that Petitioner had made a knowing and, voluntary decision to plead guilty and that there was an adequate factual basis upon which to accept the guilty plea. Following a presentence report, the Court sentenced Petitioner to 600 months which the parties jointly recommended as the appropriate disposition.

The Court does not believe on this record that Petitioner has made any showing that counsel's performance was legally deficient nor is there any evidence of prejudice pursuant to the <u>Strickland</u> standard. Accordingly, Petitioner's ineffective assistance of counsel claim must fail. The Court concludes that Petitioner has failed to demonstrate a legal and cognizable basis for relief. Accordingly, the Petitioner's motion pursuant to § 2255 is DENIED.

A Certificate of Appealability

There is no absolute entitlement to appeal a district court's denial of the Motion. See 28 U.S.C. § 2253 (c) (1). "A [Certificate of Appealability, or COA]" may issue only if the applicant has made a substantial showing of the denial of a constitutional right. *Id* at § 2253 (c) (2). To meet this burden an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate' to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983). Here the Court has concluded that Petitioner made a knowing, voluntary and understanding decision to

forego a trial, to enter a guilty plea, and xxxxxxxx.  It is the Court's view that Petitioner has raised no arguments which causes this Court to view the issues as debatable, or finds that the issues could have been resolved differently, or to conclude that the issues raise questions which warrant further review.  Accordingly, the Court is compelled in this case to deny a Certificate of Appealability.

       A separate Order will be issued.

December 6, 2013

/s/
Alexander Williams, Jr.
United States District Court